Lee McCarty, Executor of the Last Will and Testament of Robert McCarty, Deceased, Appellee, v. Clyde McCarty, Appellant.

Gen. No. 8,678.

Opinion filed January 16, 1933. Rehearing denied April 5, 1933.

Funk & McKeene, for appellant.

Bellatti, Samuell & Moriarty, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This is a proceeding in forcible entry and detainer, brought in the circuit court of Scott county by Lee

McCarty, executor of the last will and testament of Robert McCarty, deceased, against Clyde McCarty, to recover possession of the west half of the northeast quarter of section 36 in township 14 north and range 12 west of the third principal meridian, Scott county, Illinois, a purely possessory action.

The facts are that Robert McCarty, father of the said Lee McCarty and Clyde McCarty, died testate on or about October 29, A. D. 1929, seized and possessed of the land in controversy and leaving to survive him as his only heirs at law and legatees nine children and six grandchildren, three of said grandchildren being minors. There were sufficient personal assets to pay the debts against his estate, and no necessity to sell land to pay his debts.

By the terms of his will he provided first, for the payment of his funeral expenses and debts; second, he gave to his children at his death all personal property owned by him, share and share alike; "Third— it is my will and I so direct that my executor hereinafter named sell all of my real estate within three years after my death, at public or private sale, as he may see fit, and in either case I give him full power to make a deed or deeds to the purchaser or purchasers, to vest a good title in either, and the proceeds of said sale after the payment and expenses of the sale to be equally divided between my children then living share and share alike, and the children that may be dead, leaving a child or children, surviving such child or children to take the share of the deceased parent." Fourth, directs that his personal property be sold and the proceeds with any money after funeral expenses and debts are paid be divided as provided in clause two of the will; lastly, appoints Lee McCarty executor of said will and revokes all former wills.

In the third clause of the will is to be found the only provision or direction concerning the real estate of the

testator—simply to sell and divide the proceeds among his children and their descendants.

At the time of the death of the said Robert McCarty, the defendant Clyde McCarty was in possession of the land in controversy under a lease between the said Robert McCarty and himself for the year beginning March 1, 1929, and ending March 1, 1930, and he continued to hold over as a tenant from year to year until the commencement of this suit. On November 28, 1931, the said Lee McCarty, executor of the last will and testament of the said Robert McCarty, deceased, caused to be served on the defendant Clyde McCarty a notice to terminate his tenancy and to deliver up possession of said premises to said executor on March 1, 1932. The defendant not surrendering possession of said premises to the said executor, this action was brought to the April, 1932, term of the circuit court of Scott county, a jury was waived and a trial had before the court. The court found that the plaintiff was entitled to the possession of the real estate described in the complaint filed in said cause and ordered that the plaintiff recover possession of said premises; that the defendant, Clyde McCarty, pay the costs of said proceeding and that a writ of possession issue, to the rendition of which judgment the defendant excepted and the record is brought by appellant to this court for review.

A great many cases in the Illinois reports are cited by counsel on either side and dissected, few of which have any bearing upon the exact issue raised in this case. It was laid down in Hill on Trustees (4th Am. Ed.) p. 732:

"For instance, if a testator devise lands to his executors to sell, the freehold will pass to them by the devise, coupled with the power; but if the devise be merely 'that his executors shall sell' the land, the executors take only a power and the freehold vests in

the heir by descent, and so it seems to be the better opinion that a devise of land to be sold by the executors, without any words of direct gift, will invest them with a power only and not pass the legal estate.'' This rule is supported by a great many English authorities.

The same rule is laid down in Perry on Trusts (6th ed.) vol. one, § 398; Perry on Trusts (6th ed.) volume two, §§ 765, 769 and 789; and 31 Cyc. 1091. The same principle is enunciated in 40 Cyc. 1820 and 1823. The following cases set out in substance the same rule: *Peters v. Beverly,* 10 Pet. (U. S.) 532; *Olsen v. Weber,* 194 Iowa 512; same case 27 A. L. R. 1370; *De Charette v. St. Matthews Bank & Trust Co.,* 214 Ky. 400, 283 S. W. 410, found in 50 A. L. R. 34; and *Trustees of Presbyterian Church v. Mize,* 181 Ky. 567, 205 S. W. 674, found in 2 A. L. R. 1237.

But the entire question as raised in the case at bar has been passed upon by the Supreme Court of this State in *Lambert v. Harvey,* 100 Ill. 338, where the court say:

''Catharine S. Harvey and Alma W. Kingsley, defendants in error, obtained a judgment in an action of ejectment in the Pike county circuit court, at its April term, 1880, against James W. Lambert and James Sharp, the plaintiffs in error, for the recovery of certain real estate in said county, to reverse which the present writ of error is prosecuted.

''Defendants in error deraign title to the land in controversy through their father, Silas E. Shepherd, who died seized of the premises on the 12th day of October, 1877, leaving a widow, and defendants in error, his only children and heirs at law. It is claimed by plaintiffs in error, that under the will of the said Silas E. Shepherd, Catharine S. Harvey alone acquired the legal title to the premises in controversy, and hence there was no right of recovery in the names of both defendants in error, and this really is the only

question presented by the record which we regard of sufficient importance to consider,—indeed, it may be said that it is the only question about which there is any just ground for controversy.

"The provisions of the will relied on for showing title in Mrs. Harvey alone, are as follows, to-wit:

" 'Item 7. As soon after the death of my said wife as it may conveniently and advantageously be done, I direct that all accounts, notes, bonds and judgments be collected, and all property, both *real* and personal and mixed, be sold, and after defraying the expenses of executing this will, I direct that my daughter Alma W. Kingsley be paid $1000, and that the remainder of my entire estate shall be given to my daughter Catharine S. Harvey, aforesaid.

" 'Item 8. If my daughter Catharine shall not be living at the time this will shall be *executed,* I direct that which is herein bequeathed to her shall be given to her daughter, Alma Harvey.'

"Her appointment as executrix, and these two items of the will, furnish the only grounds for the position that she took the exclusive legal title to the land in controversy.

"The testator obviously intended that the disposition of his estate made by the will should not take effect until after the death of his wife,—or, in other words, it was his intention that no division of the estate should take place until after her death, and that when that event occurred such division was to be made with reference to the condition of things then existing, and not with reference to the condition of things at the time of the testator's death. Whether Mrs. Harvey was to ultimately take any beneficial interest under the will, depended upon the contingency of her outliving the widow; for if the widow survived her, the daughter of Mrs. Harvey was to take under the will what her mother would otherwise have taken had

she survived the widow. That the rights of the parties, so far as Mrs. Harvey and her daughter are concerned, were to be determined by the condition of things at the time of the widow's death, clearly appears from the 8th item of the will above cited. The testator declares, that 'if my daughter Catharine shall not be living at the time this will shall be *executed,* I direct that which is herein bequeathed to her shall be given to her daughter, Alma Harvey.' By the expression 'at the time this will shall be executed,' the testator evidently refers to the time of converting the estate into money and distributing it under the will, which could not be done until after the widow's death, and whether Mrs. Harvey or her daughter would take at this time, depended entirely upon the contingency already stated.

''The will does not, specifically or by necessary implication, give the land of the testator, or any portion of it, to either of the daughters, and hence the legal title devolved by descent on both of them as tenants in common, and the suit was therefore properly brought in both their names.

''It is suggested, however, that inasmuch as the will directs the executrix to sell and convert the real estate into money, Mrs. Harvey, by implication, took the fee. We do not think so. It is true there is a class of cases where executors are held to take the legal estate, by implication. This occurs where they are required to perform certain duties with respect to realty which can only be performed by one clothed with the legal title. But there is no just ground for such a construction in the present case. A mere power to sell is all that was necessary in this case to carry into effect the objects of the will, and such a power only was conferred.''

This same rule has been followed in this state in *Drake v. Steele,* 242 Ill. 301; *Emmerson v. Merritt,* 249

Ill. 538; *Buckner v. Carr,* 302 Ill. 378; *Knight v. Gregory,* 333 Ill. 643, and *Lawson v. Illinois Merchants Trust Co.,* 337 Ill. 49.

In *Buckner v. Carr, supra,* the court held: "A power of sale of lands given to executors by a will which expressed no object for the sale was held, where there were not sufficient personal assets to pay the debts and legacies, to be a power coupled with a trust, of which a court of equity has jurisdiction. (*Wardwell v. McDowell,* 31 Ill. 364.) Where full power is granted to and the duty imposed upon an executrix to sell and convey real estate and distribute the proceeds to legatees a trust is created. (*Greenwood v. Greenwood,* 178 Ill. 387.) Since the executor is directed to sell and convey real estate and must distribute the proceeds, active duties are imposed on him and the trust is an active trust. It is true that the executor under this will does not take the legal title to the land, for his only duty is to sell the land as directed under the power given him by the will and to distribute the proceeds among the legatees. (*Emmerson v. Merritt,* 249 Ill. 538; *Lambert v. Harvey,* 100 id. 338.) However, this is immaterial, because, as was said in *Ebey v. Adams,* 135 Ill. 80, quoting from *Baker v. Copenbarger, supra:* ' "The legal title to the land is held in trust for the purposes specified in the will, whether the title is left by the will to descend to the heir by operation of law or by the will it is vested in a trustee." . . . In either event the title would be divested upon the execution of the power of sale.' The conversion takes effect at the death of the testator; the gift to his children is a bequest of money; they have no interest in the land, and therefore no title upon which they can maintain a bill for partition. In a similar case it was said that a good reason for sustaining the demurrer and dismissing the bill was that the beneficiaries under the will took the property

not as real estate but as personal property. (*Burbach v. Burbach,* 217 Ill. 547.) In this case, as in that, it was not left to the discretion of the executor to sell or not, but it was the intention of the testator that there should be a sale of the real estate and a division of the proceeds, which would be personal property and not a proper subject for a bill of partition."

In *Greenwood v. Greenwood,* cited *supra,* a part of the power to the executrix was "giving and granting unto her (executrix) full power to take possession of and in all things manage and control my said estate during her executorship, the same as I could if living," and, of course, effected on active trust.

*Buckner v. Carr, supra,* arose on a bill by heirs to partition the land, and the real meaning of the opinion of the court in that case is, by the language used, that the legal title, whether in the executrix or the heirs, was held in trust, subject to the direction to sell. The court had already held: "It is true that the executor under this will does not take the legal title to the land, for his only duty is to sell the land as directed under the power given him by the will and to distribute the proceeds among the legatees," citing *Emmerson v. Merritt, supra,* and *Lambert v. Harvey, supra.*

In *Lawson v. Illinois Merchants Trust Co., supra,* the court held:

"The gift to the children of Iver Lawson was not subject to any intervening estate but was to them directly, the real estate subject to the widow's right to one-third of the net income. She had no interest in the personal estate given them and the trustees took no title thereto. They were given power to sell and convey to 'purchasers,'—not to the devisees,—and to apply so much of the children's share as may be necessary to provide for them in a proper manner, with power to invest, in their discretion, as will be most advantageous to the interest of testator's estate. The

creation of trustees and the execution of the discretionary powers granted did not require vesting title in them, and the will did not vest them with title. (*Defrees v. Brydon,* 275 Ill. 530; *Drake v. Steele,* 242 id. 301; *Black v. Bailey,* 142 Ark. 201; *Ducker v. Burnham,* 146 Ill. 9; *West v. Fitz,* 109 id. 425; *Page v. Davidson,* 22 id. 111; *Lambert v. Harvey,* 100 id. 338; *Emmerson v. Merritt,* 249 id. 538; *Knight v. Gregory,* 333 id. 643.) The testator's intention was that title defeasibly pass to his children without any conveyance from the trustees. (*Harvey v. Ballard,* 252 Ill. 57.) . . .

"As we construe the will no particular estate preceded the devise to testator's children, except that the widow was to have for life one-third of the net income from the real property."

Neither has the executor, with a power of sale, any possessory rights in or to the lands. In *Ryan v. Duncan,* 88 Ill. 144, it is held: "This court has repeatedly decided, that an administrator takes neither an estate, title nor interest in the realty, and that he can not support any possessory or real action, in law or equity, for the recovery or maintenance of possession or title, or to clear up title from clouds from adverse claims; that, if necessary to sell for the payment of debts, he must take the estate as he finds it, and if incumbered, or there be clouds upon the title, sell it subject thereto. *Stone v. Wood,* 16 Ill. 177; *Smith v. McConnell,* 17 id. 135; *Walbridge v. Day,* 31 id. 379; *Phelps v. Funkhouser,* 39 id. 402; *Cutter v. Thompson,* 51 id. 390; *Le Moyne v. Quimby et al.,* 70 id. 399; *Gridley v. Watson,* 53 id. 186." And in *Anderson v. Shepard,* 285 Ill. 544, it is held: "An executor has no estate in or power over the real estate of the testator by virtue of the law and has only such estate or power as is granted by the will." The same rule is laid down in *Roberts v. Baker,* 65 Ill. App. 111.

From all of this authority it seems to be settled that the courts of this State follow the common law, and where the executor is clothed only with the power of sale and the distribution of the proceeds, with no power of management or other trust powers, he does not take the legal title to the lands, but the legal title descends to the heir and remains in abeyance, subject to the terms of the will.

It results, therefore, that the judgment of the circuit court of Scott county should be and is reversed.

*Reversed.*